### 266. MOUNT VERNON BANK v. GIBBS et al.

1. The intention of the General Assembly in the passage of the act of 1900, relating to attorney's fees (Acts 1900, p. 53), was evidently dual. It conferred a benefit on the debtor, by relieving him from the burden of attorney's fees, while foreseeing, as a consequence thereof, relief to the public from the expense of the litigation thus prevented. When complied with, the debtor saves the attorney's fees; the public saves the expense of trial.
2. The "return day" of a term of court is the last day a suit can be filed to be returnable to that term. Keeping in view the manifest intention of the legislature and conserving the plainly beneficial effect of the act in question, the term "return day," therein contained, is to be presumed to have been used to convey the same meaning which had generally and legally been applied to it previously to its passage. *Johnson v. State,* ante, 195.
3. Hence, where suit had been brought upon a promissory note, containing provision for attorney's fees, and it was admitted that the written notice of intention to sue had been duly given, and it was uncontradicted that payment of the debt and interest thereon was not made until several days after the last return day, it was error to enter a judgment relieving the defendant from the attorney's fees.

Complaint, from city court of Mount Vernon—Judge Geiger. December 10, 1906.

Submitted April 8,—Decided April 25, 1907.

*W. M. Lewis, M. B. Calhoun,* for plaintiff.

RUSSELL, J. Suit was brought in the city court of Mt. Vernon, on a promissory note which provided for the payment of ten per cent. attorney's fees, if collected by law or through an attorney at

law. In the record appears the following: "Notice of intention to sue note. Oct. 24, 1906. To J. W. Gibbs, N. B. Gibbs, E. S. Gibbs: You are hereby notified that I intend to bring suit against you to the December monthly term, 1906, of the city court of Mt. Vernon, of said county, on a promissory note made and executed by you to the Mt. Vernon Bank, on the 23 day of January, 1904, and for the principal sum of sixty-three dollars and eighty-five cents; said note falling due on the 1st day of November, 1904, and bearing interest from maturity at the rate of 8 per cent. per annum, and 10 per cent. attorney's fees. . . And if you fail to pay said note on or before the return day of the said court, at the term above mentioned, I shall sue for said attorney's fees, in addition to the principal and interest due thereon, said note having been placed in my hands by the holder thereof for collection. M. B. Calhoun, attorney for plaintiff."

The time for holding the court, as it appears, was the second Monday (10th) of December, 1906. And on December 3 the principal, interest, and costs due on the note were paid. The attorney's fees were not paid. On the 10th of December, 1906, the defendant, J. W. Gibbs, filed the following sworn answer: (1) "Defendant shows to the court that he has paid off and discharged all the principal, interest, and costs due on said suit, and that said payment was made before the return day of said court. (2) Defendant denies his liability for the attorney's fees, alleged to be due on said note." By agreement of the parties, the issues were submitted to the trial judge without a jury, together with another case between the same parties, involving the same issue, and as to which latter case it is further agreed in writing that the judgment of this court shall be binding. On the trial in the court below it was agreed in open court that Gibbs, the maker, had paid the principal, interest, and costs accrued, in both of said cases. And therefore the only question submitted in that court, or in this, was whether the defendants are liable for the ten per cent. attorney's fees stipulated to be paid, in the note. The case was submitted upon the following agreed statement of facts: that the principal, interest, and costs were paid on Monday, December 3, 1906; that the December monthly term, 1906, of said court convened on Monday, December 10, 1906; in other words, that the note was not paid fifteen days before the first

day of December term, 1906, of the court. And it was admitted that the notice of plaintiff's intention to sue on the note, and to sue for the ten per cent. attorney's fees, had been duly and legally served on all of the defendants more than ten days before the filing of the suit. Upon this agreed statement of facts the court entered the following judgment: "It appearing to the court that the above-stated case has been settled, except the attorney's fees alleged to be due, and the same being submitted to the court on an agreed statement of facts, the only question being the liability of defendants for said attorney's fees, it is ordered by the court that said defendants be relieved of the payment of the attorney's fees alleged to be due, this order to be of force and effect in each one of said cases stated as above, filed to the December monthly term of the city court of Mt. Vernon, Dec. 10, 1906."

We think the court erred in not entering up judgment for the attorney's fees. Section 3667 of the Civil Code, as amended by the act of 1900 (Acts of 1900, p. 53)', is as follows: "Obligations to pay attorney's fees upon any note or other evidence of indebtedness . . are void, and no court shall enforce such agreement to pay attorney's fees unless the debtor shall fail to pay such debt on or before the return day of the court to which suit is brought for the collection of the same; provided, the holder of the obligation sued upon, his agent or attorney, notifies the defendant in writing, ten days before suit is brought, of his intention to bring suit, and also the term of the court to which suit will be brought." There can be no doubt as to the written notice in the case. Defendant admitted he was notified in writing ten days before the suit was brought; which means ten days before it was filed. Did the defendant, as alleged in his answer, "pay such debt" before "the return day?" The trial court seems to have decided the case upon the idea that the words "return day" meant the first day of the term. But if the words "return day" be construed to mean the first day of the court (as they must have been construed by the trial judge, to authorize the judgment he rendered upon the evidence), the notice provided for by law would be absolutely useless, because the debtor would already have been informed, by service of the petition and process, not that he would be sued, but that he in fact had been sued.

There can be no question as to the meaning of the phrase "return day," as used in the act of 1900. It has a general ordinary meaning; and it has been defined according to that meaning, in the decisions of the Supreme Court of this State. It always had reference to the filing of the suit, and, popularly, is most generally called "the last return day." The legislature, when changing an existing law, as in creating a new law, is to be presumed to understand the meaning of the words employed, and to use such words to convey the same meaning as is commonly attached to them generally at the time of their use. Furthermore, one of the cardinal rules to be observed, in ascertaining the meaning of any word employed in a statute, is to look to the intention of the lawmakers. In the passage of the act of 1900, the General Assembly evidently intended to accomplish two purposes. It desired to relieve the debtor, as far as possible, from the burden of attorney's fees, where they could be of no benefit to him. And in making it to his interest to relieve himself from the payment of attorney's fees, by speedy payment of the debt, it sought thereby at the same time to relieve the public, as far as possible, from the burdens of useless litigation. The interest of the public and the courts was in view of the legislative mind, as well as the interest of the debtor; and one of the most beneficial results of legislative wisdom is the prevention of useless lawsuits. If the debt was paid, and the law discharged the attorney's fees in consequence of the payment of the debt before the last return day, the public would be saved the expense of trial, the officers of court their trouble, and the creditor delay. The act confers a benefit on the debtor, foreseeing as a consequence relief to the public from useless litigation. The debtor saves the attorney's fees; the public saves expenses of court. This purpose of the act would be practically defeated if the words "return day" were held to mean the first day of the court.

Beginning with the passage of the "Twitty bill" (Acts 1890-1, p. 221; Civil Code, §3667), our laws have seemed to view attorney's fees askance; and, construing the whole act together, it is the evident intention of the General Assembly to give every debtor who has promised to pay attorney's fees, whether suit be brought or not, at least ten days in which to remove that liability, by payment; for he is to be notified at least ten days before the

latest day the suit can be brought to that term; and if he pays the demand before the return day, the obligation to pay attorney's fees becomes void. The manifest purpose of the law was to give to the debtor ten days, not only to relieve himself from paying attorney's fees, but, in most instances, to avoid suit altogether. The expression "return day," as stated above, as construed by our courts has a fixed and definite meaning. It means the last day on which suits returnable to the next term may be filed. *Baxley v. Bennett*, 33 *Ga.* 146; *Hood* v. *Powers*, 57 *Ga.* 246; *Everett* v. *Ferst's Sons & Co.*, 126 *Ga.* 662. The defendant made his payment seven days before court; and under the act of 1906 (Acts 1906, p. 294), creating the city court of Mount Vernon, the last filing day is fifteen days before the first day of the term to which the suit is returnable; so that his payment was *after* instead of *before* the return day. The defendant admitted in open court that the notice was served more than ten days before the time of filing the suit; and, by failing to pay within the ten days, and paying eight days after the suit was filed, he became subject to the attorney's fees, according to the undisputed evidence. It was therefore error for the judge of the city court to enter a judgment relieving the defendant from his obligation as to attorney's fees. There should be a judgment for attorney's fees on the amount due (at the time of the payment), according to the terms of the contract.                    *Judgment reversed.*