A95A2733. SOUTHEAST TIMBERLANDS, INC. et al.
v. SECURITY NATIONAL BANK.
(469 SE2d 454)

BEASLEY, Chief Judge.

Southeast Timberlands appeals the trial court's confirmation of a foreclosure sale carried out by its creditor, Security National Bank. Timberlands contends that a defect in the required advertisement made confirmation improper. Timberlands defaulted on a $362,000 note which renewed an original note issued for $400,000 in 1989. The property in question secured both notes. Because the advertisement was not defective per se, and because no evidence showed this alleged defect affected the selling price, we affirm the trial court's confirmation.

1. Timberlands asserts that the published notice was defective as a matter of law because it referenced only a debt of $400,000 when that debt had been decreased to $362,000, the original note marked "paid by renewal," and a renewal note issued. But the property pledged secured both the $400,000 note and "all other indebtedness, past or future, owed" by Timberlands to the bank. The advertisement accurately described the property pledged, *Norwood Realty Co. v. First Fed. &c. of Atlanta*, 99 Ga. App. 692, 695 (2) (109 SE2d 844) (1959), and no evidence showed the $362,000 renewal note extinguished any obligations under the original note. See *C & S Nat. Bank v. Richardson*, 190 Ga. App. 36 (378 SE2d 159) (1989) (renewal note does not extinguish original note unless parties agree otherwise); *American Mtg. Co. &c. v. Rawlings*, 127 Ga. 82 (1) (56 SE 110) (1906). The advertisement referenced "all renewal or renewals, extension or extensions of said indebtedness, either in whole or in part" and an-

nounced that the bank had declared the entire "balance," not note, due and collectible.

The minimum legal requirements of a foreclosure advertisement are prescribed in OCGA § 9-13-140 (a), and only a failure to properly include those items will render the advertisement defective as a matter of law. *Shingler v. Coastal &c. Credit Assn.*, 180 Ga. App. 539, 540 (2) (a) (349 SE2d 785) (1986). The amount of the debt is not one of the required items, see *Wardlaw v. Woodruff*, 175 Ga. 515, 517 (9) (165 SE 557) (1932), so a misstatement or overstatement of the debt does not render this advertisement legally defective. See *First Nat. Bank of Atlanta v. Ferrell*, 239 Ga. 8, 11 (235 SE2d 507) (1977), where it was held that so long as any obligation is in default, an advertisement improperly identifying the obligation in default is not error per se.

2. If a foreclosure advertisement is not defective as a matter of law, defects in it will prevent confirmation only if the factfinder determines those defects "chilled" bidding and caused an inadequate selling price. *Boyce v. Hughes*, 241 Ga. 357, 358 (1) (245 SE2d 308) (1978); see also *Smith v. Citizens & Southern Fin. Corp.*, 245 Ga. 850, 853 (3) (268 SE2d 157) (1980). A primary object of the advertisement is to attract buyers who will compete against one another so as to yield the highest price; its contents are important to the process. Thus, "[e]rrors that would not confuse the bidding intentions of any potential bidder of sufficient mental capacity to enter a binding contract for the sale of the real property do not show a chilling of the sale so that a fair market value bid was not obtained." *Williams v. South Central Farm Credit, ACA*, 215 Ga. App. 740, 742 (2) (452 SE2d 148) (1994). Timberlands concedes sufficient evidence supports the trial court's implicit finding that the property brought fair market value. See *Oates v. Sea Island Bank*, 172 Ga. App. 178 (1) (322 SE2d 291) (1984).

Even without that concession, this alleged defect alone would not result in a required denial of the confirmation. The debtor in *Boyce*, supra at 358, made a similar argument when he challenged a foreclosure advertisement which improperly stated attorney fees and additional interest would be claimed against the property. As in this case, the debtor in *Boyce* argued that the improper claim of debt chilled bidding by making it appear a higher bid would be needed to purchase the property. The Court rejected that argument, noting that a bidder at a foreclosure sale is not required to bid the amount of the indebtedness. We likewise reject Timberlands' argument.

Timberlands points us to older cases from other jurisdictions for the proposition that substantially overstating the amount of the debt may chill bidding, but one has to look no further than *Smith*, supra at 853 (3), to find recognition of that problem in our own cases. As

the Supreme Court noted in *Smith*, however, a debtor might equally claim bidding was chilled by a failure to include the amount of a debt. In such circumstances, the factfinder is charged with determining whether language in the foreclosure advertisement chilled bidding. Id.

Timberlands does not challenge the notice of sale it received, compare *Lee v. O'Quinn*, 184 Ga. 44, 46 (3), (4) (190 SE 564) (1937), or the bank's compliance with the procedures for judicial sales, see OCGA § 9-13-160 et seq.; it only asserts that improper information contained in the required advertisement made the sale defective. Considering the main purpose of the advertisement, as stated earlier, we recognize that many extraneous factors may influence bidders. This Court cannot create an ironclad form of advertisement to the public, not subject to challenge, any better than the legislature can. Consequently, we have consistently held that once the trial court determines the advertisement matches the legal requirements of OCGA § 9-13-140, any additions to or omissions from the notice are simply factors in the key determination whether the property was sold fairly for an adequate price. *Walker v. Northeast &c. Credit Assn.*, 148 Ga. App. 121, 122 (2) (251 SE2d 92) (1978); see, e.g., *West Lumber Co. v. Schnuck*, 204 Ga. 827, 835 (3) (51 SE2d 644) (1949); *Shingler*, supra at 540. This process ensures the power of sale was exercised fairly, as required by OCGA § 23-2-114.

3. Timberlands has produced no evidence showing the alleged defect could have chilled the bidding. Instead, it agrees sufficient evidence supported the trial court's implicit finding that the property sold for an adequate price. Unfortunately, the trial court made no explicit findings of fact and conclusions of law regarding the legality of the advertisement, any possible effect these alleged defects had on bidding, or the fair market value of the property. The trial court must specifically determine these and other specified matters. OCGA § 44-14-161 (b) and (c).

Although the summary nature of the court's order impedes our review, the responsibility for assuring a detailed order rests with Timberlands, which failed to request it either before or after the ruling was made pursuant to OCGA § 9-11-52 (a) or (c). *Pruitt v. First Nat. Bank of Habersham County*, 142 Ga. App. 100 (1) (235 SE2d 617) (1977). This procedure for obtaining written findings is applicable to confirmation hearings. See *Lanier v. Citizens State Bank*, 186 Ga. App. 395 (367 SE2d 585) (1988) (decided under prior version of § 9-11-52). *La Ronde v. Amsouth Bank of Florida*, 203 Ga. App. 400 (416 SE2d 881) (1992), is a recent example of a case where the trial court did provide an explanatory order in a confirmation proceeding. As repeated in *La Ronde*, the court's "findings and conclusions have the effect of a jury verdict." Id. at 401.

In the absence of any indication to the contrary, we conclude the

trial court determined these alleged defects did not chill the bidding or result in an inadequate price for the foreclosed property.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 27, 1996.

*Groover & Childs, Denmark Groover, Jr.*, for appellants.
*Chambless, Higdon & Carson, James F. Carson, Jr.*, for appellee.